# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE       )
      )
      )
v.       )     Cr.A. No.: 1304024347
      )
      )
ALAIN M. KIMBI,       )
      )
Defendant.       )
      )

Submitted: July 31, 2015
Decided: August 21, 2015

Christopher Marques, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Kester Crosse, Esquire
Office of the Public Defender
900 N. King Street
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

## INTRODUCTION

On April 27, 2013, Alain M. Kimbi ("Defendant") was arrested and charged with Driving While Suspended or Revoked, in violation of 21 *Del. C.* § 2756(a).[1] At trial on June 1, 2015, the Court heard testimony from Detective Sean Raftery ("Detective Raftery") and Defendant. At the conclusion of trial, the Court reserved its decision, and ordered supplemental briefing. This is the Court's final decision after trial.

## FACTUAL BACKGROUND

The facts in this matter are undisputed. On April 27, 2013, Detective Raftery was assigned to patrol the surrounding neighborhoods along Pulaski Highway. At the intersection of Wilton Boulevard and Pulaski Highway, Detective Raftery observed Defendant driving a maroon Lincoln Towncar. While Defendant was turning left from Wilton Bouevard onto E. Pulaski Highway, he failed to signal. Due to the amount of traffic that morning, Detective Raftery followed Defendant until he felt that it was safe to stop the vehicle. Eventually, Detective Raftery stopped Defendant and asked for Defendant's identification. Defendant stated that he did not have any form of identification in his possession, so Detective Raftery asked for him to provide his name, address, phone number and date of birth. Detective Raftery verified Defendant's name and information in DELJIS and CEJIS. CEJIS showed that Defendant was issued a temporary driver's license number, No. 1740985, and that he was currently suspended from driving.[2] Defendant testified that he had previously applied for a license but was denied by

---

[1] Defendant was also charged with Failure to Report Change of Address, in violation of 21 *Del. C.* § 315, and Improper Stop or Decrease in Speed Without Giving Proper Signal, in violation of 21 *Del. C.* § 4155(c). However, on June 1, 2015, prior to trial, the State entered a *nollo prosequi* on both charges, and proceeded to trial only on the charge of Driving While Suspended or Revoked.

[2] *See* State's Exh. 1. Defendant was issued this temporary license number for record keeping purposes, which subsequently created a driving record for Defendant.

the Division of Motor Vehicles ("DMV") because of "previous cases,"[3] that he had to resolve prior to obtaining a driver's license.

## DISCUSSION

The Court is called upon to determine whether an individual who had never been issued a driver's license can be found to have violated 21 *Del. C.* § 2756(a).[4] Under § 2756(a), "[a]ny person whose driver's license or driving privileges have been suspended or revoked and who drives any motor vehicle upon the highways of this State during the period of suspension or revocation shall . . . be fined . . . and be imprisoned."[5] Notably, § 2756(a) provides suspension of driving privileges. Title 21 does not define 'privilege,' so the Court must look to its ordinary and usual meanings.[6] Black's Law Dictionary defines privilege as "[a] special legal right . . . granted to a person or class of persons" and further provides that "[a] privilege grants someone the legal freedom to do or not to do a given act."[7] The fact that § 2756 uses disjunctive language – "driver's license *or* driving privileges" – suggests that a driver's license and a driving privilege are not one in the same.

The State contends that under § 2756, a person may have his or her driving privilege suspended independent of having a driver's license suspended or revoked because obtaining a driver's license is merely a way to exercise the privilege to drive. In support of its argument, the State points to *State v. Bowersox*, which concerned the application of 21 *Del. C.* § 2809. Section 2809 addresses the restoration of driving privileges for habitual offenders, and establishes three

---

[3] Defendant testified that these "previous cases" consisted of noise complaints.
[4] At trial, Defendant also challenged Detective Raftery's initial stop, arguing that the testimony elicited at trial suggested that the stop was pretextual. After analyzing the record before the Court, there is insufficient evidence to support that conclusion.
[5] 21 *Del. C.* § 2756(a).
[6] *Virtual Bus. Enterprises, LLC v. Maryland Cas. Co.*, 2010 WL 1427409, at *5 (Del. Super. Apr. 9, 2010) (citing *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.1992).
[7] Black's Law Dictionary (10th ed. 2014).

3

requirements that must be met in order for a habitual offender to be issued a driver's license.[8] A habitual offender is prohibited from being issued a driver's license: (1) during the applicable habitual offender statutory period; (2) until the defendant meets all financial responsibility requirements and; (3) until the court restores the privilege to operate a motor vehicle to the defendant.[9] With respect to this third requirement, § 2809 further provides that the Court may use its discretion in restoring a habitual offender's driving privileges based on certain terms and conditions that the Court may have prescribed.[10] Therefore, under § 2809, in order for a habitual offender to obtain a license, he must first have his driving privileges restored, which further evidences that there is a distinction between a "driving privilege" and a "driver's license" as referred to in § 2756.

The State further supports its argument by looking to the Uniform Commercial Drivers License Act, particularly 21 *Del. C.* § 2615(d), which provides:

> Whenever an *unlicensed driver* from this State is convicted of any violation as provided in § 2612 of this title, the Division will establish a driving record in the person's name and, if appropriate, *withdraw the person's driving privileges by license suspension, revocation,* disqualification, cancellation or denial when authorized by statute or Division policy. Those persons whose driving privileges are withdrawn under this section will be reinstated when they have completed the reinstatement procedures specified in statute or Division policy.[11]

Therefore, under § 2615(d), an unlicensed driver can still have a driving record and have driving privileges suspended without having a license, which again demonstrates that there is a distinction between a "driving privilege" and a "driver's license" as referred to in § 2756.

---

[8] 21 *Del. C.* § 2809
[9] *Id.*
[10] *Id.* at § 2809(c).
[11] 21 *Del. C.* § 2615(d) (emphasis added).

4

Defendant suggests that the Court should look to the Superior Court's decision in *State v. Glenn*,[12] however, the Court finds that *State v. Dennis*,[13] which was issued by the Delaware Supreme Court subsequent to *Glenn*, is more instructive on the issue before the Court. In *Dennis*, the State sought to amend the Information, which previously charged the defendant with driving while his license had been revoked, to the charge of driving while his driving privileges had been revoked.[14] When discussing § 2756, the Court stated that "[t]he object of this statute is to prohibit the operation of a car on our highways by one who has no driving privileges."[15] The Court further provided that whether a "[driver's] license or merely his driving privileges had been revoked [was] of little moment."[16] Instead, the Court found that "the important consideration is whether [the driver] had or did not have the privilege of driving on our roads."[17] Thus, even though Defendant never possessed a driver's license, the key determination here is whether Defendant's driving privileges were revoked when he was charged under § 2756.

In order to establish that a defendant was Driving while Suspended, in violation of 21 *Del. C.* § 2756, the State must prove: (1) that the defendant's driving license or driving privileges were suspended or revoked; (2) that the revocation or suspension was legal; and (3) that during the period of such revocation or suspension, the defendant operated a motor vehicle on the public highway in Delaware.[18]

---

[12] 1973 WL 157797 (Del. Super. Mar. 28, 1973).
[13] 206 A.2d 729 (Del. 1973).
[14] *State v. Dennis*, 306 A.2d 729, 730 (Del. 1973).
[15] *Id.* at 731.
[16] *Id.*
[17] *Id.* This rationale correlates with 21 *Del. C.* § 2758(b), which provides that "[a]ny person not licensed as a driver who is convicted of driving a motor vehicle during a license denial period shall be punished as provided in § 2756 of this Title."
[18] 21 *Del. C.* § 2756(a); *McMonigle v. State*, 2009 WL 27311, at *2 (Del. Super. Jan. 6, 2009); *Fuentes v. State*, 2002 WL 32071656, at *2 (Del. Super. Dec. 30, 2002); *State v. Moore*, 269 A.2d 242 (Del. Super. 1970).

In this case, Defendant was driving without a license, during a time in which the DMV had denied his application for a driver's license. Defendant had been previously denied a driver's license, and therefore, his ability to obtain a driver's license and concomitant privilege to drive had been revoked and/or suspended until he resolved other pending legal matters. Thus, it is clear that Defendant violated § 2756(a) when he drove a vehicle while his driving privileges had been suspended.

## CONCLUSION

The State has met its burden of proving beyond a reasonable doubt that Defendant was driving while his driving privileges had been revoked and/or suspended in violation of 21 *Del. C.* § 2756. Accordingly, the Court finds Defendant Alain M. Kimbi **GUILTY** of driving a vehicle while his driving privileges were suspended and/or revoked. This Judicial Officer shall retain jurisdiction of this case and will schedule it forthwith for sentencing.

**IT IS SO ORDERED.**

Sheldon K. Rennie,
Judge